**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

**BEATRIZ LAGUER,**

                                  Plaintiff,

                   v.

**NORTHWELL HEALTH LENOX HILL**
**HOSPITAL, CHRISTOPHER RUPERT in his**
**former official capacity as Director of Nursing**
**Operations and Finance at Lenox Hill Hospital,**
**and AMADA GARCIA**

                                 Defendants.
-------------------------------------------------------------------X

**COMPLAINT**

Civil Action

_____

**Jury Trial Demanded**

## INTRODUCTION

1.   Plaintiff **BEATRIZ LAGUER** ("Plaintiff"), by and through her undersigned counsel, brings this civil rights and employment action against **NORTHWELL HEALTH LENOX HILL HOSPITAL** ("Lenox Hill" or "the Hospital") and its agents for race-based discrimination, retaliation, and interference with protected rights in violation of:

   a. Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d et seq.;

   b. 42 U.S.C. §1981;

   c. the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §290 et seq.;

   d. the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §8-101 et seq.; and

   e. the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2615.

2.    Plaintiff, a Black woman with an unblemished thirty-five-year record of service, was subjected to discriminatory scrutiny, disparate treatment, and retaliation culminating in her wrongful termination on October 19, 2022.

3.    Her discharge followed a pretextual investigation into alleged overtime discrepancies that occurred while she was on approved leave and without her authorization.

4.    Defendants targeted Plaintiff for heightened scrutiny and punishment while similarly situated white employees were not investigated or terminated for comparable issues.

5.    Plaintiff was also retaliated against for exercising her rights under the FMLA and for opposing discriminatory practices.

6.    Defendants' conduct was willful, malicious, and in reckless disregard of Plaintiff's protected rights.

7.    Plaintiff seeks declaratory, injunctive, compensatory, liquidated, and punitive relief.

## JURISDICTION AND VENUE

8.    This Court has federal-question jurisdiction under 28 U.S.C. §1331 because this action arises under the laws of the United States, including Title VI, 42 U.S.C. §1981, and the FMLA.

9.    The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's related state and city law claims.

10.    Venue is proper in this District under 28 U.S.C. §1391(b) because Defendants conduct business within, and the events giving rise to these claims occurred in, the Southern District of New York.

## PARTIES

11.   Plaintiff Beatriz Laguer is a resident of the State of New York and, at all relevant times, was employed by Lenox Hill as a Senior Payroll Analyst until her wrongful termination on October 19, 2022.

12.   Defendant Northwell Health Lenox Hill Hospital is a medical center and clinical campus of the Zucker School of Medicine located in Manhattan, New York, and a recipient of federal funds subject to Title VI.

13.   Defendant Christopher Ruppert was at all relevant times Director of Nursing Operations and Finance at Lenox Hill, acting within the scope of his employment.

14.   Defendant Amada Garcia was at all relevant times Manager of Payroll Operations and Plaintiff's direct supervisor, acting within the scope of her employment.

15.   Lenox Hill is liable for the acts of Ruppert and Garcia under principles of respondeat superior.

## FACTUAL BACKGROUND

**Longstanding Service and Exemplary Record**

16.   Plaintiff began her employment with Lenox Hill Hospital in July 1987 as a Scheduling Clerk and later rose to the position of Senior Payroll Analyst.

17.   For more than thirty-five (35) years, Plaintiff served the Hospital with distinction, professionalism, and dedication, consistently receiving positive feedback and maintaining a spotless disciplinary record.

**December 2021 Complaint to Human Resources**

18.    In or about December 2021, after multiple incidents in November 2021, Plaintiff submitted a detailed written complaint to Maxine Carrington, Vice President of Human Resources at Northwell Health.

19.    In that letter, Plaintiff reported ongoing harassment and hyper-scrutiny by Christopher Ruppert, explaining that in her thirty-five (35) years of service she had never been treated so disrespectfully or unfairly by any supervisor.

20.    Plaintiff wrote, in part:

"Lately I feel like I am being targeted and everything I do and say is put under a microscope, analyzed, and reprimanded by Christopher. It has reached the point where I am very uncomfortable speaking or even being around him for fear of being reprimanded or talked down to."

21.    Plaintiff also identified specific examples: Ruppert publicly questioned her competence, spoke to her in a condescending tone, and excluded her from meetings he regularly held with white colleagues performing identical functions.

22.    This correspondence placed Defendant on actual notice of ongoing racial discrimination and retaliation.

23.    Despite this notice, Northwell Health failed to investigate or correct the misconduct, displaying deliberate indifference and effectively ratifying Ruppert's behavior.

**Escalating Hostility and Pretextual Investigation**

24.    On or about August 9, 2022, following a routine staff meeting, Plaintiff was summoned to the office of Christopher Ruppert, with Amada Garcia present, and questioned about alleged overtime discrepancies involving another employee, Sasha Tomlinson.

25.    Plaintiff immediately explained that the questioned hours were entered while she was on approved leave and without her authorization.

26.    Defendants ignored her explanation and announced that an "investigation" and audit of her work would be conducted.

27.    Plaintiff was not informed of specific allegations, denied representation, and was never given the opportunity to review or respond to any findings.

28.    Immediately after her HR complaint, Ruppert's hostility intensified -- he micromanaged Plaintiff's work, imposed unrealistic deadlines, and fabricated minor infractions to build a record against her.

29.    By comparison, non-Black employees were afforded representation and leniency for similar or greater mistakes.

30.    This so-called investigation took place against the backdrop of Plaintiff's scheduled vacation and subsequent approved FMLA medical leave, which she took to address stress-induced anxiety and depression resulting from Defendants' treatment.

31.    While Plaintiff was still on approved leave, she began receiving reports from co-workers that her name had been crossed off department timesheets and that management stated she would not be returning.

32.    A colleague, Rondell Barry, informed Plaintiff that her schedule had been removed from future timesheets and that rumors circulated of her impending termination.

33.    The ongoing speculation and ostracism caused Plaintiff severe emotional distress, insomnia, loss of appetite, and weight loss, for which she sought medical treatment and therapy.

34.    Plaintiff formally applied for and was granted FMLA leave.

35.    While on leave, Plaintiff received correspondence from Human Resources dated April 4, 2022, stating that an investigation had been opened but would be "placed on hold" until her return, demonstrating that Defendants had been targeting Plaintiff long before she was informed of any investigation.

36.    During her leave, Garcia repeatedly pressured Plaintiff about returning to work and inquired whether she had been medically cleared, despite knowledge of her ongoing treatment.

37.    Around this same period, Tomlinson -- the employee at the center of the supposed discrepancy -- informed Plaintiff that she had never discussed overtime scheduling with Plaintiff while Plaintiff was out of the office.

38.    Defendants ignored this exculpatory evidence and used the investigation as a pretext for termination.

39.    On or about October 19, 2022, the day Plaintiff was medically cleared to return, she was called to Ruppert's office and terminated effective immediately.

40.    When Plaintiff requested a moment to step outside, Garcia physically blocked the doorway, preventing her from leaving the room. Ruppert instructed security to escort her from the premises.

41.    Plaintiff was given only minutes to collect her belongings after over three decades of service.

42.    Defendants' stated reason -- "timekeeping discrepancies" -- was false and pretextual, as they knew the entries occurred while Plaintiff was on approved leave and had no involvement in authorizing the hours.

43.    Non-Black employees accused of similar issues were not disciplined, investigated, or terminated.

44.    Plaintiff's termination occurred in close temporal proximity to both her December 2021 discrimination complaint and her FMLA leave, supporting a strong inference of retaliatory motive.

45.    Upon information and belief, other employees of color within Lenox Hill's administrative departments have also been subjected to disparate discipline and retaliatory treatment, evidencing a pattern and practice of discriminatory management practices.

46.    As a direct result of Defendants' conduct, Plaintiff suffered severe emotional distress, humiliation, reputational damage, loss of income, and loss of career opportunities, the effects of which continue to this day.

## CLAIMS FOR RELIEF

## COUNT I – RACE DISCRIMINATION IN VIOLATION OF TITLE VI (42 U.S.C. §2000d)

47.    Plaintiff incorporates by reference Paragraphs 1–46.

48.    Lenox Hill receives federal financial assistance and is subject to Title VI.

49.    Defendants intentionally discriminated against Plaintiff by subjecting her to disparate treatment and termination on the basis of race.

50.    Defendants' conduct violates 42 U.S.C. §2000d.

51.    As a direct result, Plaintiff suffered economic loss, emotional distress, and reputational harm.

## COUNT II – RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF 42 U.S.C. §1981

52.    Plaintiff incorporates by reference Paragraphs 1–51.

53.    42 U.S.C. §1981 guarantees equal rights to make and enforce contracts.

54.  Defendants intentionally interfered with Plaintiff's contractual rights because of her race.

55.  Plaintiff opposed racially discriminatory conduct and was terminated in retaliation.

56.  Defendants acted willfully and with reckless disregard for Plaintiff's rights.

57.  Defendants' discriminatory and retaliatory acts were part of a pattern and practice of denying minority employees equal contractual protections.

## COUNT III – DISCRIMINATION AND RETALIATION IN VIOLATION OF THE NYSHRL

58.  Plaintiff incorporates by reference Paragraphs 1–57.

59.  The NYSHRL prohibits discrimination and retaliation based on race and gender.

60.  Defendants discriminated against Plaintiff by treating her less favorably than similarly situated employees outside her protected class.

61.  Defendants knowingly allowed a racially hostile environment to persist after receiving Plaintiff's written complaint, constituting willful nonfeasance.

62.  As a result, Plaintiff suffered economic and emotional harm.

## COUNT IV – DISCRIMINATION AND RETALIATION IN VIOLATION OF THE NYCHRL

63.  Plaintiff incorporates by reference Paragraphs 1–62.

64.  The NYCHRL prohibits discrimination and retaliation on the basis of race and gender.

65.  Defendants discriminated and retaliated against Plaintiff by treating her less favorably and terminating her on pretextual grounds.

66.  Discrimination or retaliation need only be one motivating factor under the NYCHRL.

67.  As a result, Plaintiff suffered lost wages, emotional distress, and reputational harm.

**COUNT V – INTERFERENCE AND RETALIATION IN VIOLATION OF THE**

**FAMILY AND MEDICAL LEAVE ACT (29 U.S.C. §2615)**

68.    Plaintiff incorporates by reference Paragraphs 1–67.

69.    Plaintiff was eligible for FMLA leave.

70.    Defendants were employers under the FMLA.

71.    Plaintiff took approved FMLA leave to address serious health conditions.

72.    Defendants interfered with Plaintiff's FMLA rights by discouraging her from taking leave, questioning her return, and failing to restore her position.

73.    Defendants retaliated by terminating her employment immediately upon her return.

74.    The timing of termination establishes retaliatory motive.

75.    Defendants' actions were willful within the meaning of 29 U.S.C. §2617(c)(2), warranting liquidated damages.

**COUNT VI – RETALIATION UNDER 42 U.S.C. §1981, NYSHRL, AND NYCHRL**

76.    Plaintiff incorporates by reference Paragraphs 1–75.

77.    Plaintiff engaged in protected activity when she complained in writing to Vice President Maxine Carrington in December 2021 about harassment by Christopher Ruppert.

78.    Defendants retaliated against Plaintiff for engaging in protected activity by escalating scrutiny, initiating a sham investigation, and terminating her employment.

79.    The retaliatory acts began immediately after Plaintiff's HR complaint and intensified following her FMLA leave approval, demonstrating a clear causal nexus between her protected activity and termination.

80.    Defendants' conduct would dissuade a reasonable employee from engaging in protected activity, satisfying the *Burlington Northern v. White* standard.

**COUNT VII – HOSTILE WORK ENVIRONMENT UNDER FEDERAL, STATE, AND CITY LAW**

81.   Plaintiff incorporates by reference Paragraphs 1–80.

82.   Defendants subjected Plaintiff to severe, pervasive, and unwelcome conduct that created a hostile and abusive work environment.

83.   The harassment included public reprimands, isolation from communications, excessive scrutiny, and physical restraint during her termination meeting.

84.   The conduct was motivated by race and retaliation for protected activity.

85.   Defendants' deliberate failure to intervene despite repeated notice demonstrates willful tolerance of a hostile workplace.

86.   As a result, Plaintiff suffered emotional distress, humiliation, and damage to her professional reputation.

**PUNITIVE DAMAGES ALLEGATIONS**

87.   Plaintiff incorporates by reference all foregoing allegations.

88.   Defendants' actions were outrageous, malicious, and undertaken with reckless indifference to Plaintiff's civil rights.

89.   Through managerial employees including Ruppert and Garcia, Defendants:

   a. Orchestrated a sham investigation to create pretext for termination;

   b. Denied Plaintiff representation and procedural fairness;

   c. Ignored exculpatory evidence;

   d. Retaliated for FMLA leave and discrimination complaints;

   e. Physically restrained Plaintiff during her termination meeting; and

   f. Knowingly disregarded Plaintiff's written complaints and ignored Northwell's own anti-

10

discrimination policies.

90.    These acts were committed by individuals with decision-making authority, rendering

Lenox Hill vicariously liable for punitive damages.

91.    Defendants' conduct warrants punitive damages under 42 U.S.C. §1981 and the NYCHRL,

and liquidated damages under the FMLA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Beatriz Laguer respectfully requests that this Court:

a. Declare that Defendants' conduct violated Title VI, 42 U.S.C. §1981, the NYSHRL, the

NYCHRL, and the FMLA;

b. Award compensatory damages including back pay, front pay, benefits, and damages for

emotional distress;

c. Award punitive and liquidated damages;

d. Order injunctive relief including expungement of adverse employment records;

e. Award pre- and post-judgment interest;

f. Award reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988 and other applicable

statutes;

g. Award damages for loss of career advancement and reputational injury;

h. Order Defendant to implement mandatory anti-discrimination and retaliation training,

reporting mechanisms, and independent HR oversight; and

i. Issue an injunction prohibiting further retaliation or interference with Plaintiff's statutory

rights.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

**Dated:** Westchester, New York
          October 16, 2025


*/s/ Jorge Luis Vasquez*
**Respectfully Submitted,**
**Jorge L. Vasquez, Jr., Esq.**
VASQUEZ ATTORNEYS AT LAW, P.C.
141 Parkway Road, Suite 14
Bronxville, New York 10708
(212) 752-8408
jorge@vasquezpc.com
Attorney for Plaintiff